2011 BNH 009
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                            Bk. No. 11-10797-JMD
                                                                  Chapter 7
Gerard D. Scannell,
        Debtor

*Edmond J. Ford, Esq.*
*Ford & Weaver, P.A.*
*Attorney for Debtor*

*Charles R. Powell III, Esq.*
*Devine, Millimet & Branch, P.A.*
*Attorney for Paul Scannell*

## **MEMORANDUM OPINION**

### I.  INTRODUCTION

On May 25, 2011, the Court held a non-evidentiary hearing on a motion filed by the Debtor pursuant to 11 U.S.C. § 522(f)(2) seeking to avoid a judicial lien obtained prepetition by the Debtor's brother Paul Scannell (Doc. No. 12). Paul Scannell objected to the motion on various grounds (Doc. No. 33). At the conclusion of the hearing, the Court ordered the parties to file memoranda of law on the issue of whether, when performing the lien avoidance calculation under § 522(f)(2), the Debtor must use the amount of the exemption the Debtor actually claimed in Schedule C or whether the Debtor may use the amount the Debtor could have claimed on Schedule C but did not, i.e., the statutory maximum under the exemption scheme chosen by the Debtor.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtor filed a chapter 7 bankruptcy petition on March 3, 2011. On Schedule A, he listed his homestead property in Chelmsford, Massachusetts, as being worth $510,000.00 and subject to secured claims totaling $730,292.72. On Schedule C, the Debtor indicated he was claiming exemptions pursuant to 11 U.S.C. § 522(b)(3) and claimed a homestead exemption under state law, Mass. Gen. Laws c. 188 § 1, in the amount of $100,000.00. Pursuant to that state statute, the Debtor would be entitled to an exemption in the maximum amount of $500,000.00.

The Debtor filed a motion seeking to avoid a judicial lien obtained by Paul Scannell on November 19, 2009, in the amount of $200,000.00.[1] The motion lists various liens on the property, including a mortgage totaling $464,411.19 and five other judicial liens totaling $65,483.06, which liens were subsequently avoided by the Court pursuant to § 522(f) (Doc. Nos. 20-23 and 37). In the Debtor's view, the calculation under § 522(f)(2) is as follows:

1.  Add the lien being tested for avoidance, i.e., Paul Scannell's lien in the amount of $200,000.00, with all other liens, i.e., the mortgage in the amount of $464,411.19

---

[1] Paul Scannell apparently contends that his judicial lien totals $236,067.00. See Creditor Paul Scannell's Objection to Debtor's Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f)(2), Doc. No. 33 at ¶ 8.

2

        plus a statutory lien of the Town of Chelmsford in the amount of $398.40[2] for a total of $464,809.59, and the maximum exemption allowable in the absence of liens, i.e., the $500,000.00 available under state law, to get a sum of $1,164,809.59;

2.     From that sum, i.e., $1,164,809.59, subtract the value of the property in the absence of liens, i.e., $510,000.00, in order to determine that the extent of the impairment is $654,809.59.

3.     Since the extent of the impairment of the exemption, i.e., $654,809.59, exceeds the entire value of Paul Scannell's lien, i.e., $200,000.00, Paul Scannell's entire lien is avoidable.

In Paul Scannell's view, the Debtor has undervalued his residence. He contends the property is worth between $575,000.00 and $610,000.00. In Paul Scannell's view, the calculation under § 522(f)(2) is as follows:

1.     Add the lien being tested for avoidance, i.e., Paul Scannell's lien in the amount of $236,067.00,[3] with all other liens, i.e., the mortgage and the statutory lien totaling $464,809.59, and the maximum exemption allowable in the absence of liens, i.e., the $100,000.00 claimed on Schedule C, to get a sum of $800,876.59;

2.     From that sum, i.e., $800,876.59, subtract the value of the property in the absence of liens, i.e., $610,000.00,[4] in order to determine that the extent of the impairment is $190,876.59.

3.     Since the extent of the impairment of the exemption, i.e., $190,876.59, is less than the value of Paul Scannell's lien, i.e., $236,067.00, Paul Scannell's lien is only avoidable up to $190,876.59 and the balance of $45,190.41 would remain unavoidable.

---

[2] This statutory lien was not mentioned in the motion but is noted in the Debtor's memorandum of law. See Debtor's Response to Memorandum of Law to Creditor Paul Scannell's Objection to Debtor's Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f), Doc. No. 48, at § I. The Court will include this lien in the calculation as it does not affect the outcome in this case.

[3] The Court shall use the creditor's lien value for purposes of this calculation. While using a value of $200,000.00 would affect the computation, the result is the same, i.e., $45,190.41 of Paul Scannell's lien would remain unavoided.

[4] If the Court were to use a value of $575,000.00, only $10,190.41 would remain unavoided. The Court has not yet made any determination as to the value of the Debtor's homestead.

**III. DISCUSSION**

When a debtor files for bankruptcy, all of the debtor's property becomes property of a bankruptcy estate.  11 U.S.C. § 541; Schwab v. Reilly, 130 S. Ct. 2652, 2657 (2010); Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992).  The debtor may prevent the distribution of certain property by claiming it as exempt.  Taylor, 503 U.S. at 642.  The debtor must file a list of the property claimed to be exempt from the bankruptcy estate.  11 U.S.C. § 522(l); Botkin v. Dupont Cmty. Credit Union, No. 10-1681, 2011 WL 2307638, at *2 (4th Cir. June 13, 2011).  That list is known as Schedule C.  Fed. R. Bankr. P. 1007(b) and 4003(a); Reilly, 130 S. Ct. at 2660; Botkin, 2011 WL 2307638, at *2.  Any property claimed as exempt in Schedule C becomes exempt unless a party in interest objects.  11 U.S.C. § 522(l); Reilly, 130 S. Ct. at 2657; Taylor, 503 U.S. at 643.  Section 522(b) allows a debtor to choose exemptions afforded by state law or the federal exemptions listed in § 522(d).  Taylor, 503 U.S. at 642.

In addition to a debtor's right to exempt property from the bankruptcy estate, a debtor may also file a motion under § 522(f) to avoid or "wipe out" a valid perfected lien or interest that a creditor has in particular property.  Botkin, 2011 WL 2307638, at *2.  The Bankruptcy Code provides for the avoidance of judicial liens as follows:

> (f)(1) . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs <u>an exemption to which the debtor would have been entitled under subsection (b) of this section</u>, if such lien is–
>
> (A) a judicial lien . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of–
>     (i) the lien;
>     (ii) all other liens on the property; and
>     (iii) <u>the amount of the exemption that the debtor could claim if there were no liens on the property</u>;

>exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
>(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

11 U.S.C. § 522(f)(1) and (2) (emphasis added). At issue in this case is whether the words "an exemption to which the debtor would have been entitled under subsection (b) of this section" in § 522(f)(1) and the words "the amount of the exemption that the debtor could claim if there were no liens on the property" in § 522(f)(2)(A)(iii) mean only the amount of the exemption that the Debtor actually claimed on Schedule C or whether they mean something else.

The United States Supreme Court's decision in Owen v. Owen, 500 U.S. 305 (1991), is relevant to this discussion as it involved a dispute between a debtor and an attaching creditor under § 522(f).[5] In that case, a chapter 7 debtor re-opened his case and moved to avoid the judgment lien of a creditor as impairing the homestead exemption to which the debtor would otherwise have been entitled under state law. The Supreme Court held that the judicial lien could be avoided under § 522(f), as impairing the debtor's state law exemption, even though the state had defined exempt property in a way that specifically excluded property encumbered by such liens. The Supreme Court explained that the question is not whether a lien impairs an exemption to which the debtor "is entitled" but rather whether it impairs an exemption to which the debtor "would have been entitled" but for the lien itself. Id. at 310-11. "The latter phrase

---

[5] Paul Scannell focuses on the Supreme Court's more recent opinion in Schwab v. Reilly, 130 S. Ct. 2652 (2010), wherein the Supreme Court considered whether an interested party needs to object under § 522(l) to an exemption, claimed in an amount that was within the limits the Bankruptcy Code allows under § 522(d), in order to preserve the estate's ability to recover the value of the asset beyond the dollar value the debtor expressly declared exempt. In the Court's view, the import of the Reilly decision in this case is limited as Reilly involved a dispute between a debtor and the trustee acting on behalf of the bankruptcy estate under § 522(b), (d) and (l), not a dispute between a debtor and an attaching creditor under § 522(f) like in Owen.

5

denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality." Id. at 311.

Given that analysis, it is not surprising that many courts have held that debtors are not limited to the exemptions they claimed on Schedule C for lien avoidance purposes under § 522(f) and that there is no precondition that debtors even claim an exemption in order to avoid a lien which the debtor contends impairs an exemption. See Botkin, 2011 WL 2307638, at *4 (indicating no need to even claim an exemption); In re Morais, No. 09-42079-JBR, 2009 WL 3054059, at *4 (Bankr. D. Mass. Sept. 18, 2009) (stating the statute does not require a debtor to have actually claimed an exemption in the property); In re Nichol, No. 08 B 19054, 2009 WL 412890, at *3 (Bankr. N.D. Ill. Feb. 6, 2009) (failing to claim the property as exempt on the debtor's schedules is irrelevant to the application of § 522(f)); In re Powell, 399 B.R. 190, 195 (Bankr. W.D. Tex. 2008) (stating the debtor is not limited to the claimed exemptions on Schedule C for purposes of § 522(f)); In re Moreno, 352 B.R. 455 (Bankr. N.D. Ill. 2006) (claiming the actual exemption is unnecessary); In re W.K. Montgomery, 80 B.R. 385, (Bankr. W.D. Tex. 1987) (stating § 522(f) directs the court to consider not what has been deemed exempt but rather what would be exempt under § 522(b)); Yamamoto v. City Bank of Honolulu (In re Yamamoto), 21 B.R. 58, 59 (Bankr. D. Haw. 1982) (stating actual exemption is unnecessary). Other courts, however, have concluded that a debtor must actually have claimed the property as exempt before the debtor may avoid a lien as impairing an exemption. See In re Wallace, No. 10-22697, 2011 WL 1807368, at *4 (Bankr. W.D.N.Y. May 12, 2011) (holding a debtor must actually claim a homestead exemption on Schedule C in order to utilize the avoidance provisions of § 522(f)); In re Church, No. 08-16202-JNF, 2009 WL 375399, at *1 (Bankr. D. Mass. Nov. 3, 2009) (indicating that where a debtor has not claimed an exemption in the property, subject to

the judicial lien, there is nothing for § 522(f) to protect); In re Berryhill, 254 B.R. 242, 244 (Bankr. N.D. Ind. 2000) (stating debtors may not avoid judicial liens upon property without actually claiming an exemption in that property).

The Court agrees with the first line of cases and not the second line of cases. Based on the language of the statute, as interpreted by the Supreme Court in Owen, § 522(f) does not limit a debtor to the exemption claimed, if any, pursuant to § 522(l) in Schedule C for purposes of the calculation under § 522(f)(2); rather, the debtor is entitled to use an exemption in the amount corresponding to the amount to which the debtor would have been entitled under § 522(b) for purposes of the calculation. Thus, in reviewing a motion to avoid a lien under § 522(f), the Court must consider whether the debtor would have been entitled to exempt the property at issue under § 522(b) not whether the debtor has scheduled the property as such under § 522(l). Powell, 399 B.R. at 197. "The statutory language specifically mandates the bankruptcy court in lien avoidance proceedings to look at the exemption the Debtor 'could claim,' not the exemption actually claimed and allowed." Id. "It is to [§] 522(b) not to [§] 522(l), that the court's attention must be directed in [§] 522(f) actions." Montgomery, 80 B.R. at 389. The cases that hold otherwise are not in accord with the provisions of the Bankruptcy Code and the decision in Owen.

The purpose of the debtors' claiming property as exempt in bankruptcy schedules is to remove an asset from the reach of creditors. Moreno, 352 B.R. at 460. In a motion to avoid a lien, the purpose is different: a debtor is seeking to enhance his fresh start by eliminating an otherwise valid judicial lien. Montgomery, 80 B.R. at 387. Accordingly, it is irrelevant for purposes of § 522(f) whether the debtor claimed the exemption on his schedules. See Moreno, 352 B.R. at 460. As described by one court,

> In a very real sense, it might be said that there are <u>two</u> independent schemes for assisting the debtor in achieving his fresh start <u>vis-a-vis</u> exemptions. The first, typified by [§] 522(l), is aimed principally at freeing select assets from the general creditor body. The second, more restricted in scope and typified by [§] 522(f), aims at liberating certain assets from certain kinds of secured creditors. Secured creditors have little justification for interfering in what assets are available to satisfy unsecured claims, so long as the secured creditors have their liens. Unsecured creditors have little interest in whether a secured creditor is able to enforce his lien against property already beyond the reach of the unsecured creditors by virtue of [§] 522(l).

In re Mitchell, 80 B.R. 372, 376 n.5 (W.D. Tex. 1987). For that reason, it is permissible for a debtor to use an exemption in performing the calculation in § 522(f) that the debtor did not claim pursuant to § 522(l) on Schedule C.[6]

Thus, applying § 522(f) to the facts of this case, and therefore using the full exemption amount of $500,000.00 to which the Debtor would have been entitled under § 522(b), and could have claimed as exempt pursuant to § 522(l), the Court finds that regardless of the total of Paul Scannell's lien ($200,000.00 vs. $236,067.00) and the value of the Debtor's home ($510,000.00 vs. $610,000.00), Paul Scannell's lien can be avoided in full as impairing the Debtor's homestead exemption:

1. Add the lien being tested for avoidance, i.e., Paul Scannell's lien in the amount of $200,000.00 [or $236,067.00], with all other liens, i.e., the mortgage and the statutory lien totaling $464,809.59, and the maximum exemption allowable in the absence of liens, i.e., the $500,000.00 available under state law, to get a sum of $1,164,809.59 [or $1,200,876.59];

---

[6] The Court notes that, even if a creditor does not timely object to a debtor's claim of exemption, creditors are free to object to a claim of exemption during litigation of lien avoidance motions under § 522(f). Botkin, 2011 WL 2307638, at *4 (citing Fed. R. Bankr. P. 4003(d) ("[A] creditor may object to a motion filed under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien.")); Montgomery, 80 B.R. at 392-93 ("[A] creditor in a chapter 7 case is permitted to contest whether the exemption on which a lien avoidance action is premised is in fact 'an exemption to which the debtor <u>would have been</u> entitled under [§] 522(b),' regardless whether the property has already been deemed exempt by virtue of [§] 522(l).").

    2.        From that sum, i.e., $1,164,809.59 [or $1,200,876.59], subtract the value of the property in the absence of liens, i.e., $610,000.00,[7] in order to determine that the extent of the impairment is $554,809.59 [or $590,876.59].

    3.        Since the extent of the impairment of the exemption, i.e., $554,809.59 [or $590,876.59], exceeds the entire value of Paul Scannell's lien, i.e., $200,000.00 [or $236,067.00], Paul Scannell's entire lien is avoidable.

## IV. CONCLUSION

For the reasons set forth above, the Court will enter a separate order overruling Paul Scannell's objection to the Debtor's motion to avoid his lien on the grounds that the Debtor is limited to a homestead exemption of $100,000.00 for purposes of the calculation under § 522(f). To the extent Paul Scannell wishes to pursue any other grounds set forth in his original objection to the motion, he may do so, although the issue of the homestead's value appears moot given the Court's ruling.[8] This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

    ENTERED at Manchester, New Hampshire.


Date:   July 27, 2011                              /s/ J. Michael Deasy
                                                            J. Michael Deasy
                                                            Bankruptcy Judge

---

[7] If the property were worth only $510,000.00, the impairment would be only $454,809.59. However, that amount still exceeds Paul Scannell's lien, whether it totals $200,000.00 or $236,067.00.

[8] The homestead would need to be worth more than $964,809.59 for there to be any value that could attach to Paul Scannell's lien and not be avoided. No one has alleged that the homestead is worth anywhere near that amount.